UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>FABIAN GODINEZ-OSEGUERA,<br><br>                Defendant. | CASE NO. CR11-5545BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE DURESS DEFENSE |

This matter comes before the Court on the Government's motion in limine to preclude duress defense (Dkt. 20). The Court has considered the pleadings filed in support of, and in opposition to, the motion and the remainder of the file. For the reasons stated herein, the Court hereby grants in part and denies in part the motion.

**I. PROCEDURAL HISTORY**

On December 8, 2011, a grand jury indicted Defendant Fabian Godinez-Oseguera, charging him with Illegal Entry After Deportation, in violation of Title 8, United States Code, Section 1326(a). On December 29, 2011, the Government filed a motion in limine to preclude any duress defense, and, on January 6, 2012, the Government filed supporting

memorandum. Dkt. 20.  On February 2, 2012, Defendant responded.  Dkt. 30.  On February 6, 2012, the Government replied.  Dkt. 31.  On February 8, 2012, the Court heard oral argument on the motion.  Dkt. 32.

## II. FACTUAL BACKGROUND

**A.     Defendant's Background**

Defendant is a 35-year-old citizen and national of Mexico who, during his time in the United States, has been convicted of: (1) alien carry/possession of firearm without license, malicious mischief, and driving with suspended license (2004 Grant County Superior Court); (2) controlled substance without prescription and driving under the influence (2007 Kitsap County Superior Court); delivery of methamphetamine and unlawful possession of a firearm (2008 Kitsap County Superior Court); witness tampering and fourth-degree assault (2011 Kitsap County Superior Court); and possession of controlled substance without prescription (2011 Grant County Superior Court).  Dkt. 23 at 2.

**B.     Deportations**

The United States has deported Defendant four times – in 2000, 2004, 2007, and 2010.  *Id*.  After his last deportation on October 23, 2010, Defendant re-entered the United States for a fifth time on October 31, 2010.  *Id*.  On November 29, 2010, an Immigration and Customs Enforcement (ICE) agent found Defendant in the Kitsap County Jail where he was in custody on charges of witness tampering and fourth-degree assault.  *Id*.  He was later convicted on the charges, and, on April 26, 2011, he was sentenced to nine months in prison.  *Id*. at 5.  After serving his prison term, Defendant

was transferred to the Grant County Jail where, on October 18, 2011, he entered a guilty plea in connection with possession of a controlled substance without prescription. *Id*. On October 20, 2011, Defendant was released to ICE custody. *Id*.

**C.      Duress Defense**

Defendant claims that he re-entered the United States due to two immediate threats in Mexico. First, he maintains that he was beaten and robbed by Mexican police in Tijuana after his October 23, 2010 deportation. *Id*. at 6-7. He claims that he reported the incident to a local human rights organization, but that he was unable to pursue the matter after Mexican police, who had learned of the report, intimidated him. *Id*. Namely, Defendant claims that two men with knives chased him and threatened to make "mincemeat" of him if he pursued his complaint. *Id*. at 7.

Second, Defendant claims that he faced threats from the Zetas drug cartel. Namely, Defendant maintains that, after the Tijuana incident, he contacted his mother to inform her about what had happened and to tell her that he intended to return south to his hometown of Michoacan. *Id*.; Dkt. 30 at 6. Defendant claims that his mother begged him not to go home. *Id*. Specifically, Defendant contends that his mother told him that his brother, Daniel, had been coerced into helping the Zetas drug cartel; that one of Daniel's friends had been brutally murdered for not cooperating with the Zetas; and that the Zetas had posted a written notice on his family's home threatening to kill anyone who turned up there. *Id*. Defendant argues that because he had nowhere to run in Mexico, his family paid for a coyote to bring him across the U.S. border once again. *Id*. at 6.

After crossing the border, Defendant did not turn himself into U.S. authorities because, according to him, "they would have arrested [and deported] me." *Id*. at 6-7. Defendant does claim, however, that he sought help from the Mexican consulate. *Id*. at 6.

### III. DISCUSSION

Defendant concedes that his re-entry into the United States was illegal, but argues that it was necessitated by the "torture[]" that he endured in Mexico and his fear of the police and Zetas. *Id*. In essence, Defendant claims that he faced two threats. The first threat arises from the beating and the follow-up intimidation that he purportedly sustained at the hands of the Mexican police. The second threat relates to the Zetas.

In a Section 1326(a) prosecution involving duress, a defendant must make a prima facie showing of duress in a pre-trial offer of proof. *See United States v. Ibarra-Pino*, 657 F.3d 1000, 1004 (9th Cir. 2011). To present a duress defense, a defendant must establish by a preponderance of the evidence (1) an immediate threat of death or serious bodily injury; (2) a well-grounded fear that the threat will be carried out; and (3) lack of a reasonable opportunity to escape the threatened harm." *Id*. Here, the Government does not contest the second element – that the Defendant had a well-grounded fear that the threat will be carried out. Dkt. 23 at 13. Instead, the Government contends that Defendant cannot establish a prima facie showing on the first and third elements. *Id*.

Having reviewed the record, the Court will allow Defendant to submit a duress defense in connection with his claim that the Mexican police, or those working for them, beat him and threatened to make "mincemeat" out of him if he did not drop his complaint to the local human rights organization. Although the Court shares the Government's

concern regarding whether or not Defendant had a reasonable opportunity to escape that particular threat, the Court defers to the principle that "fact-finding is usually a function of the jury," which requires a trial court to generally refrain from ruling on defenses as a matter of law. *United States v. Kuok*, 2012 WL 118571, at *13 (9th Cir. Jan. 17, 2012). Indeed, the instant threat is noteworthy and distinguishable in that it purportedly caused Defendant to abstain from exercising a right (i.e., pursuing a complaint with the human rights commission), as opposed to forcibly causing Defendant to commit an affirmative act against his wishes. Nonetheless, taking Defendant's proffer as true, as it must, the Court finds that Defendant is entitled to present the circumstances of this Tijuana-based threat to a jury. Accordingly, the Court denies the Government's motion to preclude a duress defense based on the above-explained threatened harm.

By contrast, the Court will *not* allow Defendant to present a duress defense that stems from his fear of the Zetas. To be immediate, a threat must be specific. *See Kuok*, 2012 WL 118571, at *14 ("[a] veiled threat of future unspecified harm" is not sufficient (citations omitted)); *see also United States v. Contento-Pachon*, 723 F.2d 691, 694 (9th Cir. 1984).[1] Although the Court acknowledges that drug cartels and gang violence are

---

[1] With respect to the first element, the Ninth Circuit has explained:

> To establish the element of immediacy, a defendant must make a prima facie showing that the defendant completed the illegal action under a threat of immediate harm to the defendant. Under this test, the threat to the defendant or the defendant's family must be present, immediate or impending . . . such that the defendant's persecutors figuratively held a gun to his head . . . compelling the defendant to commit the illegal action. . . . A threat raising the possibility of action after thirty days does not meet the requirements of immediacy.

*United States v. Vasquez-Landaver*, 527 F.3d 798, 802 (9th Cir. 2008) (citations omitted).

pervasive in Mexico, and that Defendant's family was purportedly impacted by that violence, the Court finds that Defendant's fear of Zetas is based ultimately on a speculative threat that does not appear specifically directed at Defendant. *See United States v. Becerra*, 992 F.2d 960, 964 (9th Cir. 1993) (rejecting a duress defense where the threat to "take care" of defendant's family did not include a specific time frame, and lacked detail). To allow a duress defense on these facts would render permissible any and all duress defenses on the mere showing that an illegal alien arrived from a land grappling with systemic violence. That cannot be the case. Moreover, while affording the defense the right to present their case to a jury, the Court must guard against the potentially confusing introduction of highly-charged testimony from a country conditions expert regarding the "real and rampant" threats in Mexico. Dkt. 30 at 12. Because the Court finds that the threatened harm relating to the Zetas was not immediate, the Court grants the Government's motion to preclude Defendant from introducing the related duress defense at trial.[2]

---

[2] Because the Court precludes the duress defense with respect to the Zetas threat, the Court need not decide whether or not Defendant has established the third element – i.e., whether he had a reasonable opportunity to escape the threatened harm.

## IV. ORDER

Therefore, it is hereby **ORDERED** that the Government's motion in limine to preclude duress defense is **GRANTED IN PART** and **DENIED IN PART** as specified.

Dated this 8th day of March, 2012.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge